```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW HAMPSHIRE
```

Lisa Lorrain

    v.                                        Civil No. 11-cv-145-JL
                                                  Opinion No. 2012 DNH 024
John Branscombe

## OPINION & ORDER

This case involves a boy and his dog (actually, the defendant's adult son and his dog). Plaintiff Lisa Lorrain, crashed her motorcycle into a telephone pole while trying, unsuccessfully, to avoid hitting a dog that had darted into the road in front of her. The dog was owned not by defendant John Branscombe, but by his adult son Geoff. Geoff lived with the dog on property owned by John's business, where Geoff also worked (and where he brought the dog during working hours).

Lorrain's complaint asserts a single claim against the elder Branscombe for strict liability under N.H. Rev. Stat. § 466:19, the "dog bite statute," which provides that a "person to whom . . . damage may be occasioned by a dog not owned or kept by such person shall be entitled to recover damages from the person who owns, keeps, or possesses the dog." This court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because Lorrain is a citizen of Maine, Branscombe is a citizen of New Hampshire, and the amount in controversy is greater than $75,000.

Branscombe has moved for summary judgment, see Fed. R. Civ. P. 56, arguing that the dog bite statute does not apply because (1) Lorrain's accident was not caused by any "vicious or mischievous" act by the dog, which is required under the New Hampshire Supreme Court's construction of the "dog bite" statute, and (2) Branscombe was not "the person who own[ed], ke[pt], or possesse[d] the dog" within the meaning of the statute.  After hearing oral argument, the court grants the motion.  Both of Branscombe's arguments are correct, and each independently requires that judgment enter in his favor.

    First, this case is controlled by Noyes v. Labreque, 106 N.H. 357 (1965), in which the New Hampshire Supreme Court held that the plaintiffs could not recover under the dog bite statute for injuries suffered when the defendants' dog ran out into the street in front of their motorcycle because running out into the street was not a "vicious or mischievous act."  Second, even if Noyes could be distinguished, other case law from the New Hampshire Supreme Court makes clear that Branscombe, although he may have permitted the dog to live on his property and visit his business, can not be held liable under the statute for the dog's actions as a matter of law.

I.  **Applicable legal standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial. See Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010) (citing Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009)). A fact is "material" if it could sway the outcome under applicable law. Id. (citing Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)). In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving party." Id. But the court need not credit "conclusory allegations, improbable inferences, or unsupported speculation." Meuser, 564 F.3d at 515 (quotation omitted). The following factual background is set forth accordingly.

II. **Background**

The dog, a chocolate-brown Labrador retriever named Brady, belonged to Geoff Branscombe, the adult son of defendant John Branscombe. The elder Branscombe played no role in his son's decision to acquire Brady, and did not learn that Geoff had

gotten the dog until after the fact.  John neither fed, walked, nor trained Brady.  He did not take Brady to the veterinarian; the dog was not registered in his name and never lived or stayed at his home.  He never provided Geoff with any direction or instruction as to how to restrain or control Brady.  He did, however, allow both Geoff and Brady to live, rent-free, in a residence owned by Colony Used Auto Parts, a business in which he is one of three equal partners.

That residence, located in the City of Rochester, New Hampshire, was directly adjacent to Colony, where Geoff worked.  Geoff, with his father's approval, would frequently bring the dog into work with him during business hours.  Brady played no part in the operation of the business, and came to work solely as Geoff's personal pet.  There were water dishes and dog treats in the office for Brady, but while there, Brady usually remained tied to a chair behind the sales counter.[1]

---

[1] Lorrain claims that this was "because defendant John Branscombe knew that the dog was active and he could be held liable for any injuries caused by the dog."  This proposition, however, is not supported by the record evidence she cites, and in fact, John testified at his deposition that he played no part in the decision to tie Brady to the chair.  See Branscombe Depo. (document no. 16-5) at 54:1-13.  In addition, both Branscombes have submitted affidavits attesting that John never told Geoff how to restrain Brady while the dog was at the business premises.
   In any event, whether John believed he could be held liable for injuries the dog caused at his place of business, or premises the business owned, is wholly irrelevant to whether he can be held liable for injuries the dog caused elsewhere.

On June 13, 2009, Geoff went to visit a friend and fellow Colony employee at the friend's residence on Pine River Pond Road in Wakefield, New Hampshire, and took Brady with him.  At about 10:00 p.m. that night, plaintiff Lisa Lorrain was traveling east on Pine River Pond Road within the posted speed limit when Brady suddenly darted into the road in front of her motorcycle.  Lorrain attempted to swerve to the right to avoid the dog, but nonetheless clipped his hindquarters.  She then lost control of the motorcycle and collided with a telephone pole.  Lorrain sustained extensive and permanent injuries, for which she now seeks to hold John Branscombe liable.  Brady survived the accident as well.

### III.  Analysis

As already noted, the sole claim Lorrain pleads against John Branscombe in her complaint is strict liability under New Hampshire's "dog bite statute," N.H. Rev. Stat. Ann. § 466:19.  In full, the statute provides:

> Any person to whom or to whose property, including sheep, lambs, fowl, or other domestic creatures, damage may be occasioned by a dog not owned or kept by such person shall be entitled to recover damages from the person who owns, keeps, or possesses the dog, unless the damage was occasioned to a person who was engaged in the commission of a trespass or other tort.  A parent or guardian shall be liable under this section if the owner or keeper of the dog is a minor.

Id.  Although this language does not assign any significance to the demeanor of the dog, the New Hampshire Supreme Court has put a limiting construction on the statute, holding that it permits recovery only for a dog's "vicious or mischievous conduct."  Bohan v. Ritzo, 141 N.H. 210, 214 (1996).  Branscombe argues that because a dog's running into the road is neither a vicious nor a mischievous act, § 466:19 does not apply here.

Lorrain disagrees, arguing that "the act of bolting into a roadway by a dog is per se mischievous, in that it is both reckless and negligent."  That argument is at odds, though, with the New Hampshire Supreme Court's opinion in Noyes v. Labrecque, 106 N.H. 357 (1965).  There, as here, the plaintiffs "were injured and the motorcycle on which they were riding damaged when the defendants' dog ran out into the street in front of them."  Id. at 358.  Like Lorrain, the plaintiffs alleged no negligence, but sought instead to recover under § 466:19.  Id.  In affirming the district court's dismissal of the action, the New Hampshire Supreme Court observed that the statute "does not confer a right of action on all persons indiscriminately," but "is to be given a reasonable interpretation," under which it did not "cover a situation where no vicious or mischievous acts by the dog were alleged."  Id. at 358-59.

Noyes, then, would seem to stand for the proposition that the mere "act of bolting into a roadway by a dog" is not "vicious or mischievous." Lorrain seeks to cast doubt on Noyes' validity, noting that it was decided a half-century ago and that the reported opinion contains neither a thorough recitation of the facts nor an explanation of "how the Court came to its conclusion." But, under the facts and circumstances of this action, neither the vintage of the case nor the absence of persuasive analysis permit this court to ignore its obligation "to take its law in diversity cases from the state's highest court once that court has spoken on point." EMC Corp. v. Alturi, 655 F.3d 75, 78 (1st Cir. 2011). And while it is true that the opinion in Noyes is not rich with factual detail by any means, it does state that the dog in that case ran out into the road in front of the plaintiffs' motorcycle and that, on this fact alone, the dog bite statute does not apply--which is all that matters here.

The proposition that a dog running out into the road is not, in itself, enough to trigger strict liability under § 466:19 is lent further support by the New Hampshire Supreme Court's decision in a much more recent case, Bohan v. Ritzo, 141 N.H. 210 (1996). The plaintiff in Bohan sought recovery for injuries suffered when the defendants' dog ran out in the road toward his

bicycle.  Id. at 211-12.  In rejecting the defendants' argument that § 466:19 did not apply because there was no physical contact between the dog and the plaintiff or his bicycle, the court noted that there was nonetheless specific evidence of "mischievous actions" by the dog, to wit, "that the defendants' dog mischievously ran toward the plaintiff's leg as if to bite him." Id. at 213.  Notably, the court did not suggest that the act of running out into the road itself was vicious or mischievous, or otherwise cast doubt on Noyes.  Bohan, then, is fully consistent with the holding of Noyes that to hold a dog owner liable under § 466:19 for injuries caused by his dog's running into the road, a plaintiff must demonstrate some additional element that makes the dog's conduct vicious or mischievous.

   Lorrain points to two facts that she says fit that description here:  first, that--in contrast to both Noyes and Bohan--her motorcycle actually made physical contact with Brady when it clipped his hindquarters, and, second, that Brady is dark in color and ran out into the road after sunset.  Neither of these facts bring Brady's conduct within the ambit of the statute as interpreted by the New Hampshire Supreme Court.  While Lorrain is correct that Bohan established that actual physical contact is not necessary to make out a violation of § 466:19, see 141 N.H. at 214, it did not establish the converse, i.e., that physical

contact alone is sufficient to make out a violation.  Lorrain does not claim that the contact resulted from anything that Brady did apart from simply running into the road, which again does not itself amount to "vicious or mischievous" conduct, as least as the New Hampshire Supreme Court has applied that phrase.

The same is true of Brady's color and the time of day at which the accident occurred:  neither fundamentally altered the nature of the dog's actions so as to make them mischievous (as did the dog's attempting to bite the plaintiff in Bohan). Because Lorrain has not presented any evidence creating a genuine dispute of material fact as to whether Brady's conduct was vicious or mischievous, Branscombe is entitled to summary judgment.

Branscombe is also entitled to summary judgment for the independent reason that Lorrain has not presented any evidence creating a genuine dispute of material fact as to whether he is Brady's owner, keeper, or possessor under the statute.  As noted, § 466:19 permits a person injured by a dog's vicious or mischievous act "to recover damages from the person who owns, keeps, or possesses the dog."  Lorrain does not argue that Branscombe owned or possessed Brady, but that he was the dog's keeper.  Only three reported opinions have addressed what it means to "keep" a dog within the meaning of the New Hampshire dog

9

bite statute, the most recent of which was decided in 1938. See Raymond v. Bujold, 89 N.H. 380 (1938); Gagnon v. Frank, 83 N.H. 122 (1927); Cummings v. Riley, 52 N.H. 368 (1872).[2] Those cases nonetheless make clear that, under the undisputed facts of this case, John Branscombe was not Brady's keeper as a matter of law.

As the New Hampshire Supreme Court has explained, the word "keep" as used in the statute

> implies more than the mere harboring of the dog for a limited purpose or time. It implies rather the exercise of a substantial number of the incidents of ownership by one who, though not the owner, assumes to act in his stead. One who permits the casual presence of a dog upon his premises cannot fairly be said to be its keeper; nor does he become such when he temporarily feeds or shelters it. One becomes the keeper of a dog only when he, either with or without the owner's permission, undertakes to manage, control, or care for it as dog owners in general are accustomed to do.

---

[2] Richards v. Leppard, 118 N.H. 666 (1978); Glidden v. Szybiak, 95 N.H. 318 (1949); and Janus v. Akstin, 91 N.H. 373 (1941), upon which Branscombe relies, do not address what it means to "keep" a dog, but what it means to "possess" a dog. As Lorrain conceded at oral argument, she has not argued that Branscombe "possessed" Brady; thus, the court need not consider those cases here.

Raymond, 89 N.H. at 382.³ Lorrain has adduced no evidence that John Branscombe ever "exercised a substantial number of the incidents of ownership" of or "undertook to manage, control, or care for" Brady. In fact, all the evidence is to the contrary. He did not feed Brady. He did not walk Brady. He did not train Brady. He did not take Brady to the veterinarian. He did not register Brady in his name. He did not allow Brady to stay at his home. He did not tell his son how to control Brady. Though Lorrain derisively dismisses these as "snapshot" facts, they are exactly the type of facts that could permit a reasonable finder of fact to conclude that Branscombe held himself out as Brady's owner or cared for Brady in the way "dog owners in general are accustomed to do." Raymond, 89 N.H. at 382. Without such facts,

---

³Lorrain claims, incorrectly, that in Cummings, the New Hampshire Supreme Court defined a "keeper" as "one who, having the possession and control of a house or premises, suffers and permits a dog to be kept on the premises in the way such domestic animals are usually kept,--as a member of the family, so to speak." While Cummings contains this language, it appears only in quoting the instruction given the jury by trial court, and the Supreme Court specifically cautioned that it did "not understand the language of the [trial] court as furnishing or intending to furnish a legal definition of the term 'keeper of a dog' . . . ." 52 N.H. at 370. Even if Cummings had adopted this definition of the term, though, this court would be constrained to apply the more recent definition in Raymond. See Bartlett v. Mut. Pharm. Co., Inc., 759 F. Supp. 2d 171, 193 (D.N.H. 2010) ("As a federal court exercising diversity jurisdiction over a state-law action, this court must apply the most recent statement of state law by the state's highest court.").

Lorrain cannot show that John Branscombe was the dog's "keeper" under § 466:19.

Nor do the facts emphasized by Lorrain--that Branscombe allowed his son to live, rent-free, at a residence that his business owned, and to keep Brady there; that he allowed his son to bring Brady to work with him during business hours; and that water and dog treats were provided for Brady there[4]--create a genuine dispute of material fact on this point.  At best, those facts might establish that Branscombe's relationship to Brady was akin to that of a landlord who permits his tenant's dog to live on the premises, or an employer who permits his employee to bring his dog to work.  They do not suggest that Branscombe "assume[d] to act in [Brady's owner's] stead," merely that he "harbor[ed] the dog for a limited purpose" and "permit[ted] the casual presence of a dog upon his premises," which, as just discussed, does not make him the dog's keeper.  Raymond, 89 N.H. at 382; cf. also Cummings, 52 N.H. at 369 (rejecting proposition that any "person who keeps boarders for pay, and suffers or permits such boarders to have or keep on his premises a dog" could be held

---

[4]With respect to the last of these three facts, Lorrain takes some liberty with the record evidence, asserting that Branscombe himself "provide[d] water dishes and dog cookies for the dog at Colony Used Auto Parts."  As Branscombe notes in his reply memorandum, there is no evidence as to who provided the water and treats for Brady.

liable as a "keeper" because a "keeper" is "not one who harbors a dog and permits it to remain temporarily upon his premises in [that] manner"). Because Lorrain has failed to adduce facts from which a rational jury could find differently, Branscombe is entitled to summary judgment on that basis as well.

## IV. Conclusion

For the reasons set forth above, Branscombe's motion for summary judgment[5] is GRANTED. The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: January 30, 2012

cc: John P. Flynn, III, Esq.
    Paul A. Maggiotto, Esq.
    Robert C. Dewhirst, Esq.

---

[5] Document no. 16.